[No. 43378-4-I. Division One. January 18, 2000.]

*In the Matter of the Estate of* THOMAS A. FLEMING.

ANTONIO B. MARZAN, *Individually and as Personal Representative, Appellant,* v. JUDITH KOVACS, *as Personal Representative,* ET AL., *Respondents.*

---

[10]*Glover,* 25 Wn. App. at 61.

*Michael M. Feinberg* and *Tracy M. Miller* of *Karr Tuttle Campbell*, for appellant.

*Karen Marie Thompson* of *Thompson & Howle*, for respondent Kovacs.

*Christine O. Gregoire, Attorney General*, and *Cindy R. Evans, Assistant*, for respondent Department of Revenue.

BAKER, J. — Margaret Fleming voluntarily surrendered her infant son Thomas Fleming to a charitable organization for adoption. At that time, she agreed to a court order that permanently relinquished all maternal rights to him. However, Thomas was never adopted. He died intestate fifty years later with no spouse or issue. Margaret Fleming and her later-born son Antonio Marzan now assert that they are intestate heirs of Thomas. Because we hold that the termination order permanently divested Fleming and her kin of intestate inheritance rights, Thomas's estate escheats to the State of Washington.

I

Thomas A. Fleming was born out of wedlock to Margaret Fleming in 1946. Paternity was never established. Ms. Fleming decided to give up her son for adoption. The King County Juvenile Court entered a parental termination order in 1947 stating that Margaret Mary Fleming was "hereby permanently deprived of any and all maternal rights and interests in and to the said Baby Boy Fleming," committing him into the permanent custody of Catholic Charity of the Diocese of Seattle, and authorizing that organization to consent to his adoption. Thomas was never adopted. He lived in foster care until the age of majority.

Thomas died intestate in 1996. He was not married and he had no children or stepchildren. Thomas was survived by two biological relatives: his mother Margaret Fleming and his half-brother Antonio Marzan, who was born to Ms. Fleming after she terminated her parental rights to Thomas.

In 1998, Judith Kovacs, the personal administrator of Thomas's estate, filed a petition for determination of heirship. She asked the court to find that Margaret Fleming and her kin were not entitled to inherit in intestacy from Thomas because Ms. Fleming had terminated all maternal rights to Thomas at his birth. She argued that Thomas's estate should therefore escheat to the State of Washington because he died intestate without any legal heirs. In the alternative, she asked the court to instruct what action she should take if it determined that there are potential heirs to the estate. Ms. Fleming and Mr. Marzan then filed a response and objections to the petition.

The commissioner agreed with Kovacs and ruled that the estate escheated because Thomas died without legal heirs. He found that the 1947 order terminating Margaret Fleming's maternal rights to Thomas also extinguished her right to intestate inheritance, and that Marzan could not inherit from Thomas because his right to intestate inheritance derived from Margaret Fleming's extinguished maternal rights. Margaret Fleming died soon after, and her son Marzan was appointed personal representative of her estate. Marzan then filed a motion to revise the ruling of the commissioner. The superior court upheld the commissioner's order. Marzan now appeals that ruling.

## II

As a preliminary matter, Marzan contends that Kovacs, as the personal representative of the estate, lacked standing to argue in favor of escheat because the State waived its right to serve as personal administrator under RCW 11.08.160 and because there were potential intestate heirs. We disagree. There is nothing in the probate statutes

or case law that constrains the personal representative's authority to present evidence of escheat to the court when the State declines the right to serve as personal administrator. A personal representative has a duty to exercise the utmost good faith and to utilize the skill, judgment and diligence which would be employed by an ordinarily cautious and prudent person in the management of her own business affairs.[1] While we need not hold that Kovacs had a duty to argue in favor of escheat, it is clear that she had standing to do so when a good faith argument under the facts and law appeared to merit such a conclusion.

■ The primary issue in this case is whether the 1947 termination order permanently deprived Margaret Fleming of the right to inherit in intestacy from Thomas. This is an issue of first impression in Washington. There are numerous cases addressing the intestate inheritance rights of adopted children and their kin. Thomas was never adopted, however, so those cases are not dispositive. Therefore, we must rely on statutory interpretation to determine the legal effect of the parental termination order on Fleming's intestate inheritance rights. Issues of statutory construction are questions of law, reviewed de novo on appeal.[2]

■ We first determine which statutes govern the legal effect of the termination proceeding. Kovacs and the State urge us to apply current dependency and adoption statutes because the probate statutes that apply are those in effect at the time of the decedent's death, and the intestacy statutes vest heirs with legal interests only upon the death of their intestate ancestor.[3] Marzan agrees that modern probate statutes apply, but argues that the termination proceeding is a separate matter that must be considered under the 1947 statutes. We hold that the legal effect of the 1947 termination order must be analyzed under the

---

[1]*In re Estate of Wilson*, 8 Wn. App. 519, 527-28, 507 P.2d 902, *review denied*, 82 Wn.2d 1010 (1973); *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985).

[2]*In re Estate of Baird*, 131 Wn.2d 514, 517-18, 933 P.2d 1031 (1997).

[3]*In re Estate of Wiltermood*, 78 Wn.2d 238, 240-41, 472 P.2d 536 (1970).

statutes in force at the time of the termination proceeding, not under those in effect at the time of Thomas's death in 1996.[4] The 1947 parental termination order was issued under REM. REV. STAT. § 1700, which governed surrender of a child to a charitable society for the purposes of receiving, caring for, or placing the child out for adoption. Therefore, we consider the termination order in light of that statute, and we need not address the arguments advanced by Kovacs and the State regarding the application of modern adoption and termination statutes to this case.[5]

We next determine whether the 1947 statute and termination order operated to permanently divest Margaret Fleming of her right to intestate inheritance from her biological son Thomas.

Under REM. REV. STAT. § 1700, when a child is surrendered to the care and custody of a benevolent or charitable incorporated society for the purpose of receiving, caring for, or placing the child out for adoption,

> then, (but not otherwise), the rights of its natural parents or of the guardian of its person (if any) shall cease and such corporation shall become entitled to the custody of such child, and shall have authority to care for and educate such child or place it either temporarily or permanently in a suitable private home in such manner as shall best secure its welfare.

The 1947 order approved Margaret Fleming's voluntary relinquishment "of all of her maternal rights and interests in and to the said child," ordered that Margaret Fleming "is hereby permanently deprived of any and all maternal rights and interests in and to the said Baby Boy Fleming," and committed Thomas to the permanent custody of the Catholic Charities of the Diocese of Seattle.

---

[4]Because chapter 13.34 RCW does not apply to this case, the basis for the trial court's ruling—that Marzan and Fleming lack standing to make a claim because this would constitute forbidden relitigation of the dependency issue under RCW 13.34.200(1)—was clearly incorrect.

[5]Furthermore, RCW 26.33.900 unequivocally states that "[a]ny proceeding initiated before January 1, 1985, shall be governed by the law in effect on the date the proceeding was initiated." Fleming's termination proceeding was initiated in 1947.

Margaret Fleming chose to surrender Thomas to a charitable society under REM. REV. STAT. § 1700. By the express language of that statute and the termination order, Margaret Fleming was permanently deprived of all maternal rights and interests in Thomas. The statute and order need not expressly provide that termination of parental rights terminates intestate succession, because "all maternal rights and interests" clearly includes intestate inheritance rights.

According to Marzan, Fleming's intestate inheritance rights were not extinguished because a series of early Washington Supreme Court cases hold that the rights of any kin to inherit in intestacy from each other cannot be extinguished absent express legislative declaration.[6] Because the Legislature has never expressly stated that termination of parental rights simultaneously cuts off intestate inheritance rights, Marzan argues that only a decree of adoption can have this effect. Marzan's overly broad reading of these cases is incorrect. The statutes addressed in those cases were silent as to the right of adopted children to inherit in intestacy from their biological parents. However, as noted, the statute and the order issued pursuant to it in this case deprived the natural parent of all rights regarding the child. The cases relied on by Marzan tracked the statutes then in effect when they held that the Legislature had not expressly terminated the intestate inheritance rights of a child from its biological parents. But the cases did not address the reverse issue presented here.

In our view, the 1947 statutes could and did give effect to the differing circumstances of a natural parent and a child in termination and adoption proceedings. Children who were permanently surrendered to foster care but never adopted had no opportunity for intestate inheritance other than from their biological parents. On the other hand,

---

[6]*In re Estate of Roderick*, 158 Wash. 377, 291 P. 325, 80 A.L.R. 1398 (1930); *In re Estate of Egley*, 16 Wn.2d 681, 134 P.2d 943, 145 A.L.R. 821 (1943); *St. Germain v. St. Germain*, 22 Wn.2d 744, 157 P.2d 981 (1945).

parents who chose to relieve themselves of the obligations of child rearing by relinquishing their children to an adoption agency nevertheless retained their legal relationship with other blood kin. There is little reason for them to reap the benefits of intestate inheritance if a child should happen to die intestate without having been adopted.

Finally, because we hold that the 1947 order terminated Margaret Fleming's intestate inheritance rights, we must decide whether it also permanently severed the right of any later-born siblings to inherit in intestacy from Thomas. Marzan contends that even if the termination of parental rights effectively removed Margaret Fleming from Thomas's family, he is a direct collateral heir of Thomas and can inherit in his own right. Kovacs contends that Marzan's right to inherit in intestacy must descend through his mother, and if her right to inherit was terminated then the line has been severed and Marzan's right terminates as well.

To determine intestate succession, we apply the probate statutes in effect at the time of the decedent's death, in this case 1996.[7] Intestacy statutes establish a system of intestate succession whereby the line of descent and distribution flows through a decedent's parents to reach the issue of parents.[8] The line must flow through a common ancestor. Margaret Fleming, as the parent of Marzan and Thomas, was the only direct connection between them. When Margaret Fleming's parental rights were terminated, the effect was to permanently sever Thomas from her family line, leaving him without a legal parent. Therefore, the line of intestate succession between Marzan and Thomas was severed as well.

Our result is in accord with *In re Estates of Donnelly*,[9] in which the Washington Supreme Court held that an adopted child could not inherit in intestacy from her biological

---

[7] *Wiltermood*, 78 Wn.2d at 240.

[8] RCW 11.04.015(2)(b) and (c).

[9] 81 Wn.2d 430, 502 P.2d 1163, 60 A.L.R.3D 620 (1972).

paternal grandfather because she had been legally removed from her natural bloodline for inheritance purposes. The Court stated that because "the adopted child cannot take from her natural father, she should not represent him and take from his father."[10] Similarly, because Margaret Fleming cannot take from Thomas, Marzan should not be able to step in and represent her.

We hold that Margaret Fleming and her son Antonio Marzan are not intestate heirs of Thomas Fleming's estate. Therefore, there are no legal heirs, and the estate must escheat to the State of Washington.

Affirmed.

AGID, A.C.J., and APPELWICK, J., concur.

Review granted at 141 Wn.2d 1001 (2000).