[No. 85944-2.   En Banc.]
Argued January 17, 2012.      Decided April 5, 2012.

*In the Matter of the Estate of* AUDREY P. BLESSING.

*Jacke L. Blair*; and *Daniel E. Huntington* (of *Richter-Wimberley PS*), for petitioners.

*Steven W. Hughes* (of *Ewing Anderson PS*), for respondents.

¶1 C. JOHNSON, J. — This case involves whether the children of the decedent's predeceased spouse can be considered "stepchildren" under the wrongful death recovery statute, RCW 4.20.020. The decedent, Audrey Blessing, and the children's father were married in 1964. The children's father died in 1994. Blessing died in 2007. Now, in this wrongful death suit brought on behalf of her estate, the estate argues the children ceased being her stepchildren when their father died, 13 years before she died. The trial court, relying on the close relationship the children and the decedent maintained up until the decedent's death, ruled that the children were "stepchildren" under RCW 4.20.020

and could be beneficiaries in the wrongful death action. The Court of Appeals reversed, holding that the stepchild/stepparent relationship had legally ended before the decedent's death. We reverse the Court of Appeals.

## FACTS

¶2 Blessing and her first husband had three children together and divorced in 1964. In December 1964, Blessing married Carl Blaschka, who had four children[1] from a previous marriage. Blessing and Blaschka raised all seven children together, though Blessing never adopted Blaschka's children.

¶3 Blessing and Blaschka were married until his death in 1994. Blessing eventually remarried in 2002, and her third husband died in 2005. The trial court found that up until Blessing's death caused by a 2007 car accident, Blessing and the Blaschka children maintained a close relationship. Blessing left a portion of her estate to the Blaschka children, whom she identified as "stepchildren" in her will. Clerk's Papers at 2.

¶4 Cynthia Hagensen, Blessing's biological child and personal representative of Blessing's estate, brought a wrongful death action against the truck driver who caused the 2007 accident. The Blaschka children filed a petition under the Trust and Estate Dispute Resolution Act, chapter 11.96A RCW, seeking a determination that they were entitled to participate as statutory beneficiaries in the wrongful death claim. The estate moved for judgment dismissing the petition, arguing that the Blaschka children were not Blessing's "stepchildren" under RCW 4.20.020 and, thus, not entitled to recover under the wrongful death statute. The trial court denied the estate's motion. The Court of Appeals reversed and awarded the estate fees and

---

[1] The children are John Blaschka, Julie Ann Frank, Diana Marie Estep, and Carla Blaschka. For simplicity, we refer to the children collectively as "the Blaschka children."

costs under RCW 11.96A.150 and RAP 18.1. *In re Estate of Blessing*, 160 Wn. App. 847, 248 P.3d 1107 (2011). We granted the Blaschka children's petition for review. *In re Estate of Blessing*, 172 Wn.2d 1001, 258 P.3d 685 (2011).

## ISSUE

¶5 Are the children of a decedent's predeceased spouse considered "stepchildren" under RCW 4.20.020, entitling them to recover in a wrongful death action?

## ANALYSIS

¶6 RCW 4.20.020, in relevant part, provides that every wrongful death action "shall be for the benefit of the wife, husband, state registered domestic partner, child or children, including stepchildren, of the person whose death shall have been so caused." The wrongful death statute was amended in 1985 to add "stepchildren" to the class of persons entitled to recover in a wrongful death action. *See* LAWS OF 1985, ch. 139, § 1. "Stepchildren" is not defined in the wrongful death statute.

¶7 Statutory interpretation involves questions of law that we review de novo. Our objective in construing a statute is to determine the legislature's intent. If the statute's meaning is plain on its face, then we must give effect to that plain meaning as an expression of legislative intent. Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). When a statutory term is undefined, the court may look to a dictionary for its ordinary meaning. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131, *cert. denied*, 131 S. Ct. 318 (2010).

¶8 Indisputably, the Blaschka children, at least during the marriage, had legal status as "stepchildren." The central question here is whether, for purposes of the statutory

claim, they lost this status at the death of their father or at some other time. The Blaschka children contend that once established, a step-relationship does not terminate when the marriage that brought the relationship into existence ends. They rely on *In re Estate of Bordeaux*, 37 Wn.2d 561, 225 P.2d 433 (1950), where we recognized in the context of inheritance tax treatment that the plain meaning of "stepchildren" includes those children whose stepparent outlives the biological or adoptive parent. They argue that because RCW 4.20.020 does not define "stepchildren," the plain meaning as found in *Bordeaux* should be applied here to determine their wrongful death beneficiary status.

¶9 The estate, on the other hand, maintains the Court of Appeals correctly determined that the plain meaning of the term "stepchildren" includes only children whose parent and stepparent are presently married. It argues that once a marriage has ended, the stepchild/stepparent relationship also ends. The estate supports this argument by dictionary definitions of the term, other statutes that define or limit "stepchildren" status to a parent's present spouse, and other cases that it argues reject the definition used by the Blaschka children.

¶10 At the outset, we emphasize the term "stepchildren" is not defined or otherwise limited under RCW 4.20.020. While the dictionary may inform the plain meaning of a term, neither definition the estate relies on supports its interpretation of "stepchildren." One defines "stepchild" as "a child of one's wife or husband by a former marriage." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2237 (2002). The other defines the term as "[t]he child of one's spouse by a previous marriage." BLACK'S LAW DICTIONARY 272 (9th ed. 2009). The estate contends these definitions do not include "ex-spouses" or "former spouses." Notably, these definitions also do not specify that stepchildren are necessarily the children of a *present* spouse by a previous marriage or former partner.

¶11 We have previously considered a similar argument in the context of estate tax calculations. In *Bordeaux*, we

held that the term "stepchild" under the statute includes those children whose stepparent survived the children's natural or adoptive parent. In that case, the decedent and her husband (who had two children from a previous relationship) had been married for 34 years when the husband died. The decedent had raised the children as if they were her own. This filial relationship continued after the husband died and until the decedent's death 15 years later. The decedent left her predeceased husband's children a portion of her estate. The question was whether the children could be classified as the decedent's "stepchildren" for inheritance tax purposes. REM. REV. STAT. § 11202 (Supp. 1943). As in this case, "stepchild" was undefined in the statute. We began our analysis by noting that it was within popular understanding that children remained "stepchildren" even though their parent died before their stepparent. Significantly, in *Bordeaux*, we also consulted the *Webster's* dictionary for the meaning of "stepchild"[2] and found nothing in this definition precluding the children of a predeceased spouse from maintaining their stepchildren status. *Bordeaux*, 37 Wn.2d at 563. The tax commission of the State of Washington, however, contended that under common law the death of the natural parent severed the "tie of affinity,"[3] legally ending the relationship between the stepchildren and stepparent.

¶12 In the opinion we discussed and thoroughly analyzed the history and development of this "affinity" principle from its medieval origins to its application in American common law. We found that American courts had discussed and applied this concept primarily in two situations: (1) when determining whether a judge or juror could serve in a case even though he was related to one of the parties through his deceased wife and (2) incest cases. This

---

[2] At the time, "stepchild" was defined as " 'a child of one's wife or husband by a former marriage.' " *Bordeaux*, 37 Wn.2d at 563 (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY).

[3] "Affinity" referred to relationships resulting from marriage rather than by blood. *See Bordeaux*, 37 Wn.2d at 565.

principle, we observed, was limited to those two categories of cases. *Bordeaux*, 37 Wn.2d at 573. Also developing under common law during that same period were decisions recognizing that the tie of affinity continued after the relationship that created the status had ended. These cases typically involved workers' compensation statutes or insurance policies issued by mutual or fraternal benefit societies, which we reasoned presented a more analogous situation to the inheritance tax statute at issue. Under that line of cases, the courts held that the step-relationship was considered to be intact and remaining even after the death of the individual whose marriage brought the relationship into existence. *Bordeaux*, 37 Wn.2d at 573-74. We cited *Steele v. Suwalski*, 75 F.2d 885 (7th Cir. 1935), in which the court explained that

> "[w]here the relationship by affinity is in fact, as it was in this case, continued beyond the death of one of the parties to the marriage which created the relationship, and where the parties continue to maintain the same family ties and relationships, considering themselves morally bound to care for each other, the District Court properly found that the relationship continued to exist."

*Bordeaux*, 37 Wn.2d at 579-80 (quoting *Steele*, 75 F.2d at 888). This reasoning in *Steele* and other workers' compensation and life insurance cases was persuasive. We noted when discussing the statutory provision that "probably not one legislator . . . understood ['stepchild'] to apply only in connection with those children whose natural [or adoptive] parent survived their stepparent, or with those children whose natural [or adoptive] parent left issue to continue the tie of affinity between them and the surviving stepparent." *Bordeaux*, 37 Wn.2d at 591. In *Bordeaux*, we held that the children retained their "stepchildren" status for legislative tax purposes even though their father had died before their stepmother.

¶13 We find no basis to distinguish the statutory analysis in *Bordeaux* to the wrongful death statute lan-

guage at issue here. Similar to the statute in *Bordeaux*, RCW 4.20.020 includes "stepchildren" without defining or limiting the term. In *Bordeaux* we found nothing in the dictionary definition precluding the plain meaning that a step-relationship could remain intact past the death of the children's natural or adoptive parent. Applying that analysis here, the Blaschka children became Blessing's stepchildren upon the marriage of their father and Blessing. Their step-relationship continued even though their father died before Blessing. We hold that the Blaschka children retained their "stepchildren" status under RCW 4.20.020.

¶14 The estate urges that *Bordeaux* is distinguishable from this case because here Blessing had remarried. That fact, however, does not make *Bordeaux* inapplicable to the interpretation of "stepchildren" under RCW 4.20.020. The foundation for the estate's argument is that once a marriage ends, the step-relationship also ends. But Blessing's marriage to Blaschka ended when Blaschka died, not when Blessing remarried. If, as the estate reasons, the step-relationship ended when the marriage ended (which was at Blaschka's death), Blessing's remarriage has no bearing on the applicability of *Bordeaux*'s interpretation of the term "stepchildren" in the statute.

¶15 The estate also argues our subsequent decision in *In re Estate of Smith*, 49 Wn.2d 229, 299 P.2d 550 (1956), supersedes *Bordeaux*'s reasoning. In *Smith*, we held that the children of the decedent's predeceased wife were not entitled to a portion of the decedent's estate under the intestacy statute. But the question there was whether a stepchild could inherit from his stepparent as an "heir-at-law" under the intestacy statute, former RCW 11.04.020 (1927), *repealed by* Laws of 1965, ch. 145, § 11.99.015. The intestacy statute in that case, unlike the inheritance tax statute at issue in *Bordeaux* and the wrongful death statute at issue here, did not expressly include "stepchildren" as a class of beneficiaries. Therefore, the reasoning and conclusion in *Smith* cannot support the estate's argument.

¶16 *Strickland v. Deaconess Hospital*, 47 Wn. App. 262, 735 P.2d 74 (1987), also does not support the estate's interpretation. In that case, the petitioners argued that the closeness of the relationship with the decedent should determine whether they were his "stepchildren" under the wrongful death statute. The court disagreed, concluding that the petitioners were not the decedent's adopted children, nor were they his stepchildren because the decedent's marriage to their mother had been invalidated. *Strickland*, 47 Wn. App. at 264, 267-69. Here, the estate's attempt to characterize *Strickland* as requiring a current, valid marriage for there to be a step-relationship conflates an invalidated marriage with a valid marriage that has ended. In *Strickland*, the decedent and the petitioners' mother were never legally married, whereas in this case, Blaschka and Blessing had a valid marriage. While the petitioners in *Strickland* were never the decedent's stepchildren, the Blaschka children indisputably became Blessing's stepchildren upon marriage.

¶17 The estate's argument is equally unsupported by the family law statutes cited. RCW 74.20A.020(8), part of the support of dependent children act, provides that " '[s]tepparent' means the present spouse of the person who is either the mother, father, or adoptive parent of a dependent child, and such status shall exist until terminated as provided for in RCW 26.16.205." In turn, RCW 26.16.205, part of the community property act, in relevant part provides that "[t]he obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death." The estate attempts to import this definition into the wrongful death statute, arguing the legislature has already established the "present spouse" limitation in other areas. What these family law statutes do establish is the legislature knows how to add language to expressly end or limit a step-relationship. RCW 4.20-.020 contains no such language. The rules of statutory construction direct that plain meaning is "discerned from the

ordinary meaning of the language at issue, . . . the context of the statute *in which that provision is found, related provisions,* and *the statutory scheme as a whole." Jacobs,* 154 Wn.2d at 600 (emphasis added) (citing *Wash. Pub. Ports Ass'n v. Dep't of Revenue,* 148 Wn.2d 637, 645, 62 P.3d 462 (2003)). The support of dependent children act and community property act are unrelated to the wrongful death statute. RCW 74.20A.020(8) and RCW 26.16.205 pertain to financial support for minor dependent children and contain limitations on the extent of that financial obligation. Conversely, RCW 4.20.020 involves tort claims that can be brought for the benefit of children (including stepchildren), regardless of their minor or dependency status. Given the differences, the definition contained in these family law statutes cannot support an interpretation of "stepchildren" under RCW 4.20.020.

¶18 The Court of Appeals, agreeing with the estate, appeared concerned that the opposite interpretation would lead to absurd results. In the court's view, the Blaschka children had lost their stepchildren status by the time Blessing had died. At best, the court explained, the Blaschka children were former stepchildren, and permitting the Blaschka children to retain their stepchildren status would follow for former divorced spouses, creating an absurd result. We disagree.

¶19 Primarily, the issue before us is the interpretation of the statutory term "stepchildren," not spouses. An equally odd result would be to limit the "stepchildren" status under RCW 4.20.020 to only those children whose stepparent died prior to their biological or adoptive parent. For example, there could very well be situations where a minor child or young adult continues to live with or rely on their stepparent past the death of their biological or adoptive parent. A limitation on those who retain their stepchildren status would exclude stepchildren in that situation from benefiting in a wrongful death suit involving their stepparent. In our view, because the term "stepchildren" is undefined

in RCW 4.20.020, which parent died first is irrelevant to whether a stepchild maintains his or her status. Any concerns over the result or regarding which stepchildren should be entitled to recover in a wrongful death suit are more appropriately factored into any damages determination.

## CONCLUSION

¶20 We reverse the Court of Appeals, reinstating the trial court's determination that the Blaschka children are statutory beneficiaries under the wrongful death statute. We vacate the attorney fees and costs the Court of Appeals awarded to the estate. The Blaschka children are awarded fees and costs under RCW 11.96A.150 and RAP 18.1 as the prevailing parties.

MADSEN, C.J., and CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.