# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Estate of<br><br>DEBORAH E. REID,<br><br>                       Deceased. | No. 49222-9-II<br><br>PART PUBLISHED OPINION |

WORSWICK, J. — Brandon Saludares is the biological child of Deborah Reid. When he was two years old, he was adopted by Reid's parents. Reid subsequently had two more children. After Reid died, her estate secured a settlement from her medical providers. Saludares sought a share of the settlement proceeds as Reid's child. He now appeals from a superior court order granting Reid's younger children's motion for summary judgment and ruling that Saludares was not Reid's statutory beneficiary for the purposes of the wrongful death claim.

Saludares argues that (1) despite his adoption, he remains a child of Reid as contemplated by the wrongful death statute, (2) the adoption decree did not terminate the parent-child relationship between himself and Reid, (3) judicial estoppel operates to make him a statutory beneficiary, and (4) the superior court erred by entering an order approving distribution of the wrongful death settlement proceeds without holding an evidentiary hearing to determine the distribution between beneficiaries.

In the published portion of this opinion, we hold that the right for a child to recover as a statutory beneficiary in a wrongful death claim is extinguished by the child's adoption. In the unpublished portion of this opinion, we further hold that Reid voluntarily relinquished her parental rights by consenting to Saludares's adoption and effectively terminated the parent-child

relationship, and that judicial estoppel does not operate to make Saludares a statutory beneficiary. Consequently, we affirm the superior court's orders.

FACTS

Reid gave birth to Saludares in 1982 when she was 17 years old. Two years later, Reid's parents adopted Saludares, with Reid's consent. Reid later gave birth to two other children—Laurenne and Dillon.[1] In 2008, Reid passed away as a result of an opiate overdose.

Reid's estate filed a wrongful death action in 2011, claiming professional negligence against the providers who prescribed Reid pain medication. The action named Laurenne, Dillon, and Saludares as potential beneficiaries. The defendants in the action agreed to pay $850,000 as part of a settlement agreement in 2016. The superior court approved the settlement and ordered that the proceeds be retained in an interest bearing trust account pending proceedings to determine how the proceeds should be divided.

Saludares, Laurenne, and Dillon filed cross motions for summary judgment on the question of whether Saludares was eligible to receive a portion of the proceeds. The superior court ruled that Saludares's adoption terminated his status as Reid's child and, consequently, entered an order granting Dillon and Laurenne's motion and denying Saludares's. The order stated:

> Brandon Saludares, a child born to Deborah E. Reid, who was adopted by others prior to Deborah E. Reid's death is not a statutory beneficiary under the terms of RCW 4.20.020, the Washington wrongful death statute, and is therefore not entitled to a share of the wrongful death recovery made on behalf of decedent.

Clerk's Papers (CP) at 255. Saludares appeals.

---

[1] For the sake of clarity, we refer to Reid's younger children by their first names. We intend no disrespect.

ANALYSIS

STATUTORY ANALYSIS

Saludares argues that his adoption had no effect on his status as Reid's child for purposes of Washington's wrongful death statute, RCW 4.20.020. He contends that "child," as used in RCW 4.20.020, means any biological child of the decedent, and therefore, the superior court erred by ruling that Saludares is not a statutory beneficiary because of his adoption. We disagree.

Statutory interpretation involves questions of law that we review de novo. *In re Estate of Blessing*, 174 Wn.2d 228, 231, 273 P.3d 975 (2012). When engaging in statutory interpretation, we endeavor to determine and give effect to the legislature's intent. *Blessing*, 174 Wn.2d at 231. In determining the legislature's intent, we must first examine the statute's plain language. *Blessing*, 174 Wn.2d at 231. We discern plain meaning from the ordinary meaning of the language at issue, the context of the statute, related provisions, and the statutory scheme as a whole. *Blessing*, 174 Wn.2d at 231.

If a statutory term is undefined, we may look to a dictionary for its ordinary meaning. *Blessing*, 174 Wn.2d at 231. When determining the meaning of undefined terms, courts "will consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions." *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001). "'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). We must also "avoid constructions that yield

3

No. 49222-9-II

unlikely, absurd or strained consequences." *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002).

A.    RCW 4.20.020 *& Adoption Statutes*

RCW 4.20.020, in relevant part, specifies the beneficiaries of a wrongful death action as follows:

> Every such action shall be for the benefit of the wife, husband, state registered domestic partner, *child or children*, including stepchildren, of the person whose death shall have been so caused.

(Emphasis added).

Chapter 4.20 RCW does not define "child" or "children." While the dictionary may inform the plain meaning of a term, focus on the literal language of RCW 4.20.020 and the dictionary definitions[2] of "child" do not answer the essential question here: whether the legislature intended an adopted child to qualify as a statutory beneficiary of his biological mother for purposes of a wrongful death action.

Consequently, we interpret RCW 4.20.020 in harmony with Washington's adoption statutes "to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes." *State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000) (alteration in original) (internal quotation marks omitted) (quoting *Employco Personnel Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)).

RCW 26.33.260(1) delineates the effect of an adoption:

---

[2] *Black's Law Dictionary* at 271, defines child as: "A person under the age of majority; At common law, a person who has not reached the age of 14; A boy or girl; a young person; A son or a daughter; A baby or fetus." (9th ed. 1990). *Webster's* defines "child" as "a son or daughter: a male or female descendant in the first degree: the immediate progeny of human parents: an adopted child." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 388 (2002).

4

> The entry of a decree of adoption divests any parent or alleged father who is not married to the adoptive parent or who has not joined in the petition for adoption of all legal rights and obligations in respect to the adoptee, except past-due child support obligations. The adoptee shall be free from all legal obligations of obedience and maintenance in respect to the parent. *The adoptee shall be, to all intents and purposes, and for all legal incidents, the child, legal heir, and lawful issue of the adoptive parent*, entitled to all rights and privileges, including the right of inheritance and the right to take under testamentary disposition, and subject to all the obligations of a natural child of the adoptive parent.

(Emphasis added).

To accept Saludares's interpretation and hold that his adoption had no effect on his status as Reid's child for purposes of the wrongful death claim, we would have to ignore the portion of RCW 26.33.260(1) which states, "The adoptee shall be, to all intents and purposes, and for all legal incidents, the child, legal heir, and lawful issue of the adoptive parent." There can be no doubt that the right to recover as a statutory beneficiary in a wrongful death action is a "legal incident." In order to give meaning to all the terms of both statutes and to harmonize RCW 4.20.020 with RCW 26.33.260, we hold that as a result of his adoption, Saludares became the "child, legal heir, and lawful issue" of his adoptive parents and not of his biological mother "for all legal incidents," including wrongful death actions. Such an interpretation is also consistent with Washington's probate statutes. RCW 11.04.085 states, "A lawfully adopted child shall not be considered an 'heir' of his or her natural parents."

Cases interpreting the effects of adoption under Washington law consistently treat the adoptive family as the natural family, favoring providing a "clean slate" to adopted children over consanguinity. For example, in *In re Estates of Donnelly*, 81 Wn.2d 430, 502 P.2d 1163 (1972), our Supreme Court examined the intersection of Washington's probate law and Washington's

5

adoption law in deciding whether an adopted child could inherit from her biological grandfather.

The court held that she could not, emphasizing the legislative objective of finality in adoptions:

> The question at bench should, therefore, be decided in the context of the broad legislative objective of giving the adopted child a "fresh start" by treating him as the natural child of the adoptive parent, and severing all ties with the past. We believe it clearly follows that the legislature intended to remove an adopted child from his natural bloodline for purposes of intestate succession.

*Donnelly*, 81 Wn.2d at 436.

This sentiment regarding the effect of adoption has remained inviolate in the years since. *In re Estate of Fleming*, 143 Wn.2d 412, 421, 21 P.3d 281 (2001) (concluding, "In order to give a child a fresh start [after an adoption], all interests and rights between the biological parent and child are severed when that relationship is terminated."); *Mitchell v. Doe*, 41 Wn. App. 846, 849-50, 706 P.2d 1100 (1985) (reasoning, "There is no policy stronger or more consistently followed in this state than that protecting the sanctity and privacy of adoptions. When an adoption has become final, previous ties to natural parents are completely severed and a wholly new relationship is created."); *see also In re Application of Santore*, 28 Wn. App. 319, 623 P.2d 702 (1981); *In re Adoption of Baby Girl K.*, 26 Wn. App. 897, 615 P.2d 1310 (1980).

Saludares offers no compelling argument as to why our Supreme Court's reasoning in *Donnelly* and its progeny should not similarly apply in this context. Rather, Saludares focuses on a case predating *Donnelly*, *In re Roderick's Estate*, 158 Wash. 377, 291 P. 325 (1930). In *Roderick*, our Supreme Court held that absent a clear legislative declaration, an adoption does not divest the adoptee from inheriting from his biological parents. 158 Wash. at 381. However, our Supreme Court expressly abrogated the *Roderick* court's approach in 2001 when it held that a mother who voluntarily relinquished her parental rights to her son could not later inherit from

6

him. *Fleming*, 143 Wn.2d at 419. The *Fleming* court explicitly departed from *Roderick*, explaining: "Contemporary probate and adoption statutes provide ample evidence the Legislature has abandoned consanguinity as the overriding policy consideration where the parent-child relationship is terminated."[3] *Fleming*, 143 Wn.2d at 419.

Saludares further argues that any interpretation of RCW 26.33.260 that has the effect of disqualifying him as a statutory beneficiary of the wrongful death claim conflicts with RCW 26.33.010. We disagree.

RCW 26.33.010 states in relevant part that "[t]he guiding principle [of adoption] must be determining what is in the best interest of the child." Saludares contends that because it would be in his best interest to receive a portion of the wrongful death settlement proceeds, any interpretation of the adoption statutes that does not result in him being a statutory beneficiary for the wrongful death action must be rejected. However, RCW 26.33.010 concerns the policy for the adoption procedures; it does not address the adoption's effect on future legal actions after the adoption is finalized. Moreover, that the best interest of the child is the guiding principle of our adoption statutes does not mean that adoption has whatever effect an adoptee prefers in any given situation throughout the rest of his life. Rather, as the statute specifically states, "[T]he purpose of adoption is to provide stable homes for children." RCW 26.33.010. RCW 26.33.260(4) clearly states, "It is the intent of the legislature that this section provide finality for adoptive placements and stable homes for children."

---

[3] In *Fleming*, the biological mother had surrendered her son to a charitable society to be placed for adoption, but a family never subsequently adopted him. 143 Wn.2d at 415.

We do not depart from the well-established interpretation of RCW 26.33.260(1)—that adoption severs all legal ties between biological parent and child—simply because Saludares contends that in this particular instance it may be in *his* best interest to receive a portion of the wrongful death settlement proceeds. The reality remains that it is in the best interest of adopted children that our adoption statutes be interpreted to give finality for adoptive placements and stable homes for children.

B.      *Avoid Absurd Results*

Saludares's statutory interpretation would render him a child of his adoptive parents as well as his biological parents. Such a result would be untenable, and we avoid interpreting a statute such that it leads to absurd or strained consequences.[4] *Atkinson*, 147 Wn.2d at 21.

Granting an adoptee the right to claim proceeds of his biological parent's wrongful death action would unreasonably expand the category of statutory beneficiaries, thus requiring the personal representative to search for potential beneficiaries. Saludares contends that his interpretation will not burden personal representatives because if no relationship between the decedent and adoptee exists then any failure to notify the adoptee would be harmless. But Saludares's interpretation would not apply only to adoptees who have relationships with their biological parents. It is untenable to expect personal representatives to discern when it is necessary to search for additional potential beneficiaries who have been adopted. Furthermore,

---

[4] We note that our holding does not implicate situations in which the spouse of a biological parent becomes an adoptive parent. RCW 26.33.260(1) expressly accounts for such scenarios: "The entry of a decree of adoption divests any parent or alleged father who is not married to the adoptive parent or who has not joined in the petition for adoption of all legal rights and obligations in respect to the adoptee."

under Saludares's interpretation, children in open adoptions would seemingly have greater legal rights than those in closed adoptions, which is an absurd result.

Saludares argues instead that recovery by an adoptee is consistent with Washington law allowing for contact between adoptees and their biological parents. He contends that such contact can result in the development of a relationship between the biological parent and the adoptee for which the adoptee should be entitled to compensation. However, while the *measure of damages* in a wrongful death suit is the pecuniary loss suffered by the surviving beneficiaries from the death of their relative, recovery is nonetheless expressly limited to the two tiers of beneficiaries identified in RCW 4.20.020. Washington courts have rejected the notion that affinity alone could qualify an individual as a statutory beneficiary.

For example, in *Tait v. Wahl*, 97 Wn. App. 765, 770, 987 P.2d 127 (1999), we held that although Tait had a "parent-child like" relationship with the decedent, her children had "familial" relationships with the decedent, and Tait and her children were financially dependent upon the decedent, they were not beneficiaries under RCW 4.20.020 and accordingly could not recover damages under Washington's wrongful death statute. Whether or not Saludares maintained a close relationship with Reid until her death[5] does not change the fact that his adoption had the effect of terminating his status as a statutory beneficiary under RCW 4.20.020.

Additionally, his interpretation would call into question the finality and privacy of many adoptions. If, despite the clear language of RCW 26.33.260, an adoptee remains a child of his biological parent in most contexts, the finality of adoption and the stability of the adopted home

---

[5] Laurenne and Dillon contest Saludares's characterization of his relationship with Reid as close.

would be undermined. A biological child could argue that she is entitled to the rights and privileges typical of legal children in a variety of contexts (i.e., health insurance), unless the legislature specifically states otherwise.

In conclusion, we hold that Saludares is not a "child" of Reid for purposes of RCW 4.20.020 as a result of his adoption,[6] and we affirm the superior court's order.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL ANALYSIS

THE ADOPTION DECREE EFFECTIVELY TERMINATED THE PARENT-CHILD RELATIONSHIP

Saludares argues that his adoption decree did not terminate the parent-child relationship between him and Reid because there was no previous petition for relinquishment or termination. However, the adoption record makes it clear that Reid voluntarily relinquished her parental rights by consenting to the adoption, and the adoption decree is an appropriate order terminating the parent-child relationship between Saludares and Reid.

RCW 26.33.130(1) states, "If the court determines, after a hearing, that the parent-child relationship should be terminated pursuant to RCW 26.33.090 . . . the court shall enter an appropriate order terminating the parent-child relationship."

---

[6] Other states that have considered whether children adopted by others prior to a decedent's death qualify as "children" in wrongful death actions have concluded that they do not. *See Phraner v. Cote Mart, Inc.*, 55 Cal. App. 4th 166, 63 Cal. Rptr. 2d 740 (1997); *Matter of Estate of Renaud*, 202 Mich. App. 588, 509 N.W.2d 858 (1993); *Johnson v. Parrish*, 159 Ga. App. 613, 284 S.E.2d 111 (1981); *Wasley v. Brown*, 193 F.Supp. 55 (E.D. Va. 1961).

RCW 26.33.090 outlines the process for the relinquishment of one's parental rights. The statute requires that the court hold a hearing to determine that any written consent has been validly executed and whether it is in the best interests of the child to terminate the parent-child relationship. If the court so finds, it awards custody of the child to the prospective adoptive parents and enters an order terminating the parent-child relationship. RCW 26.33.090.

As part of the adoption proceedings, Reid filed an affidavit of consent to the adoption, stating in relevant part:

> I fully understand that the nature and effect of a decree of absolute adoption is to *extinguish and terminate all rights, duties, obligations and liabilities* of the parent or parents of the adopted child in relation to the custody, maintenance and education of the child thereafter; and *also to deprive the parent or parents permanently of her or their parental rights in respect to the adopted child*.
> . . .This consent is executed subject to the approval of the Superior Court of the State of Washington for Clark County, and to have no effect until so approved that after this consent is approved by the Court and the Order of Relinquishment is issued and filed and the child relinquished to the Co-Petitioners.

Confidential CP at 68-69 (emphasis added).

The superior court subsequently entered findings of fact and conclusions of law wherein the court found that Reid "had previously signed a surrender and release whereby consent was given," and concluded that "to all legal intents and purposes [Saludares] should be the child of Petitioners." Confidential CP at 57-58. The decree of adoption entered by the superior court expressly approved Reid's written consent and granted the adoption.

Saludares contends that Reid's consent did not amount to a relinquishment, despite the consent's clear language, because no separate petition for relinquishment was filed, and no separate order of relinquishment or order terminating Reid's potential right was entered. However, separate petitions and orders are not required by statute. Rather, RCW 26.33.030(2)

11

expressly allows that "[a] petition under this chapter may be consolidated with any other petition under this chapter. A hearing under this chapter may be consolidated with any other hearing under this chapter."

Reid's consent to adoption clearly states that she authorized and consented to Saludares's adoption, she understood that a decree of adoption would terminate her parental rights, and that her consent would not be valid until the superior court approved it. The superior court subsequently held the requisite hearing in which it determined Reid's consent and relinquishment was validly executed and should be granted, gave custody to the adoptive parents, and ordered that Saludares become the child of the adoptive parents. This process complied with the procedure set forth in RCW 26.33.090 and the decree of adoption served as an "appropriate order" under RCW 26.33.130. The adoption made Saludares a child of his adoptive parents and severed his legal relationship with Reid; the adoption decree effectively terminated the parent-child relationship between Reid and Saludares.

JUDICIAL ESTOPPEL

Saludares also argues that because the petition for letters of administration listed him as Reid's son and he was notified of the pendency of probate proceedings, the doctrine of judicial estoppel compels his status as a statutory beneficiary. We disagree.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Anfinson v. FedEx Ground*, 174 Wn.2d 851, 861, 281 P.3d 289 (2012) (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). The two guiding principles that justify the application of judicial estoppel are

12

"preservation of respect for judicial proceedings" and "avoidance of inconsistency, duplicity, and waste of time." *Anfinson*, 174 Wn.2d at 861.

> "Three core factors" determine whether judicial estoppel applies:
>
> (1) whether 'a party's later position' is 'clearly inconsistent with its earlier position'; (2) whether 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'

*Arkison*, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968, 973 (2001)).

Here, none of the "three core factors" apply. Saludares argues that listing him as Reid's son on the letters of administration is "clearly inconsistent" with Laurenne's later argument that he is not a statutory beneficiary. Laurenne was required to name all of Reid's potential heirs in her petition for letters of administration and to subsequently give notice to those heirs. RCW 11.28.110, .237(1). Including Saludares as a potential heir did not amount to an assertion that Saludares was a statutory beneficiary for purposes of the wrongful death claim. Saludares's status as a statutory beneficiary likely remained uncertain to Laurenne at the time of her petition. To hold that Laurenne's statement amounts to an inconsistent statement for the purposes of judicial estoppel would send the message that Laurenne should have risked failing to list and provide notice to all potential heirs rather than risk listing a potential heir who was later discovered to not be a beneficiary.

Moreover, Laurenne's "inconsistent statement" did not create the perception that Laurenne misled the court in order to gain an unfair advantage over Saludares. Saludares contends that the petition for letters of administration allowed Laurenne to be appointed as the

estate's personal representative, which benefited Laurenne by allowing her to file the wrongful death action. However, nothing about Laurenne's appointment as personal representative gave her an *unfair advantage* over Saludares. Consequently, we hold that Saludares's argument based on judicial estoppel fails.

### DISTRIBUTION METHOD

The superior court entered an order approving the distribution method for the wrongful death settlement proceeds, authorizing the distribution of two-thirds of the proceeds to Dillon and Laurenne and reserving the remaining third as security for Saludares pending our decision. Saludares argues that the superior court erred by entering an order approving distribution of the wrongful death settlement proceeds without holding an evidentiary hearing to determine the distribution between beneficiaries. Because we hold that Saludares is not a statutory beneficiary entitled to proceeds of the wrongful death action, we do not address his argument.

Affirmed.

_____
Worswick, J.

We concur:

_____
Johanson, J.

_____
Bjorgen, C.J.

14