174 P.3d 105 (2007)
STATE of Washington, Respondent,
v.
Scott Eugene RIDGLEY, Appellant.
No. 35061-1-II.
Court of Appeals of Washington, Division 2.
November 20, 2007.
*106 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Lori Ellen Smith, Lewis Co. Prosecuting Atty. Office, Chehalis, WA, for Respondent.

PUBLISHED IN PART
VAN DEREN, J.
¶ 1 Scott Eugene Ridgley appeals his conviction and sentencing for attempting to *107 elude a police vehicle under RCW 46.61.024(1),[1] asserting that the jury instructions erroneously used the willful or wanton standard for defining reckless manner and that the evidence was insufficient to prove that he was on "active community placement" at the time of the offense. In his Statement of Additional Grounds for Review (SAG),[2] he asserts: (1) erroneous jury instructions, (2) unlawful pretextual traffic stop, (3) abuse of discretion in allowing hearsay statements as evidence, (4) judicial bias, and (5) ineffective assistance of counsel. We hold that the erroneous jury instruction constitutes harmless error. Ridgley's other assertions of error are without merit. Thus, we affirm.

FACTS
¶ 2 On October 8, 2005, Detective W. Duncan Adkisson of the Lewis County Sheriff's Department attempted to arrest Ridgley on an outstanding felony warrant. Acting partially on a tip, Adkisson located a parked van associated with Ridgley's address. Wearing a standard police uniform, he positioned his marked patrol car to observe the van, called central communications to verify the warrant, and waited to see if Ridgley appeared. He saw a person who looked like Ridgley enter the van and drive away.
¶ 3 Adkisson followed the van and verified through a license check that the van was the one associated with Ridgley's address. He then activated his emergency lights and attempted to stop the vehicle to verify that Ridgley was driving and to execute the arrest warrant. Although Adkisson could see Ridgley looking at the police car in his rear view mirror, Ridgley did not respond to the signal to stop and continued to drive at approximately 35 miles per hour (MPH). Adkisson then activated his siren and Ridgley pulled over and waved as if to let the police car go by. Adkisson, who knew Ridgley from prior personal contact, pulled into position next to the van and visually confirmed Ridgley's identity. Adkisson turned off his siren, rolled his window down, and yelled "Scott, turn your vehicle off." Report of Proceedings (RP) (Mar. 20, 2006) at 22. In response, Ridgley accelerated rapidly back onto the road. Adkisson gave chase at about 50 MPH with his siren on.
¶ 4 Ridgley came to a stop at an intersection and again Adkisson made eye contact with him, motioned, and shouted to Ridgley to stop. Instead, Ridgley accelerated rapidly away. This time Ridgley straddled the highway's double yellow line and reached speeds of 80-90 MPH before he ran a stop sign and turned left from the oncoming lane without signaling. Ridgley then executed another high speed left turn from the oncoming lane without signaling and again accelerated to 80-90 MPH while driving down the middle of the road toward his residence.
¶ 5 As they neared Ridgley's residence, Adkisson dropped back from the van because he observed Ridgley reaching back in the van as he drove. Ridgley then appeared to attempt to loosen the metal pipes tied to the top of the van with his left hand. Ridgley also slammed on his brakes and then rapidly accelerated three or four times. He accelerated as he neared his residence, waved at several people standing in his driveway as he passed, made an abrupt right turn into a pasture, tore through two barbed wire fences, and finally came to an abrupt stop by hitting a stump not far from a tree line. Ridgley immediately exited the van and, with Adkisson following and shouting for him to stop, ran toward the tree line and disappeared into the forest. Although search dogs were utilized, the police were unable to find him. But on March 4, 2006, police arrested Ridgley in an unrelated incident.
¶ 6 The State charged him with attempting to elude a pursuing police vehicle in violation of RCW 46.61.024(1) while on active community *108 placement. At trial, a state Community Corrections Officer (CCO) testified that Ridgley was assigned to her on February 7, 2005, for a twelve-month period of community custody, but he failed to maintain the required contact and a warrant was issued for his arrest. The CCO also testified that Ridgley was on community custody on October 8, 2005.
¶ 7 Ridgley's witnesses attempted to place him elsewhere on October 8, but one witness testified about the time frame October 6 through October 9, while the other witness offered conflicting testimony for the same period. During closing, Ridgley admitted that the van driver was guilty of the crime charged: "I can't stand before you . . . and tell you that [the State] didn't prove the driver of [the van] didn't [sic] commit the crime of attempting to elude. Quite frankly, he did more than that. He eluded." RP (Mar. 20, 2006) at 89. Ridgley's counsel's argument was that Ridgley was not the van's driver and he questioned the accuracy of Atkisson's identification.
¶ 8 Ridgley did not object to the trial court's jury instructions. Those relevant here are:
No. 6
A person commits the crime of attempting to elude a pursuing police vehicle when he wilfully[3] fails or refuses to immediately bring his vehicle to a stop after being given a visual or audible signal to bring the vehicle to a stop by a police officer, and while attempting to elude a pursuing police vehicle he drives his vehicle in a reckless manner.
A signal to stop given by a police officer may be by hand, voice, emergency light, or siren. The police officer giving such a signal must be in uniform and the officer's vehicle must be equipped with lights and siren.
No. 7
To convict the defendant of attempting to elude a pursuing police vehicle as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 8th day of October, 2005, the defendant drove a motor vehicle;
(2) That the defendant was given a visual or audible signal to stop by a uniformed police officer by hand, voice, emergency light or siren;
(3) That the signaling police officer's vehicle was equipped with lights and siren;
(4) That the defendant wilfuly failed or refused to immediately bring the vehicle to a stop after being signaled to stop;
(5) That while attempting to elude a pursuing police vehicle, the defendant drove his vehicle in a reckless manner;
(6) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
No. 8
Willful means acting intentionally and purposely, and not accidentally or inadvertently.
Wanton means acting intentionally in heedless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know or have reason to know that such conduct would, in a high degree of probability, harm a person or property.
. . . .

*109 No. 10
A person drives recklessly when he drives a vehicle in willful or wanton disregard for the safety of persons or property.
No. 11
Evidence has been presented that the defendant committed acts of Attempting to Elude a Pursuing Police Vehicle on multiple occasions. To convict the defendant of Attempting to Elude a Pursuing Police Vehicle one particular act of Attempting to Elude a Pursuing Police Vehicle must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Attempting to Elude a Pursuing Police Vehicle.
Clerk's Papers (CP) at 29-34.
¶ 9 The jury found Ridgley guilty and, by special verdict, that he was on active community placement when he committed the crime. At sentencing, the State submitted certified copies of Ridgley's judgment and sentences dating back to 1979. The State calculated Ridgley's offender score as eleven. Ridgley argued that his offender score should be ten, based on two prior robbery convictions served concurrently. The trial court instructed counsel to note Ridgley's offender score as nine plus stating "[a]fter you get to nine, it's really superfluous to go beyond that other than the fact that sometimes we see criminal history calculations that are in the 30s and 40s, and it's sometimes mindboggling." RP (July 5, 2006) at 25. The trial court sentenced Ridgley within the standard range to 29 months for attempting to elude a pursuing police vehicle.
¶ 10 Ridgley appeals.

ANALYSIS
Jury Instructions
¶ 11 Ridgley did not object to jury instructions 8 and 10 that he now contends were erroneous. Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." See RAP 2.5(a)(3). Whether RAP 2.5(a)(3) applies is based on a two-part test: (1) whether the alleged error is truly constitutional and (2) whether the alleged error is "`manifest.'" State v. Kronich, 160 Wash.2d 893, 899, 161 P.3d 982 (2007) (citing State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992)) (quoting State v. Stein, 144 Wash.2d 236, 240, 27 P.3d 184 (2001)). "An error is manifest when it has practical and identifiable consequences in the trial of the case." Stein, 144 Wash.2d at 240, 27 P.3d 184.
¶ 12 A jury instruction that relieves the State of its burden to prove every element of the crime is an error of constitutional magnitude that we may review for the first time on appeal. See Stein, 144 Wash.2d at 241, 27 P.3d 184. Ridgley's constitutional right to due process is also potentially implicated by the alleged erroneous jury instructions and, assuming there was an error in the jury instructions, it could have had "practical and identifiable consequences in the trial." Stein, 144 Wash.2d at 240, 27 P.3d 184. Thus, the error was manifest and his failure to preserve the issue at trial does not preclude our review.
¶ 13 "Constitutional error is presumed to be prejudicial," but a "constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985).
¶ 14 We review a challenged jury instruction de novo. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995). "Parties are entitled to instructions that, when taken as a whole, properly instruct the jury on the applicable law, are not misleading, and allow each party the opportunity to argue their theory of the case." State v. Redmond, 150 Wash.2d 489, 493, 78 P.3d 1001 (2003).
¶ 15 Ridgley contends that the trial court committed reversible error by instructing the jury without defining the "reckless manner" standard of RCW 46.61.024(1), instructing the jury instead using the "wanton or willful" standard of former RCW 46.61.024(1) (Laws of 2003, ch. 101, § 1). Br. *110 of Appellant at 4. The State argues that the jury instructions were not erroneous.
¶ 16 Construction of a statute is a question of law we review de novo. State v. Ammons, 136 Wash.2d 453, 456, 963 P.2d 812 (1998). We first look to the statute's plain language to fulfill our obligation and give effect to legislative intent. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. When a statute is ambiguous, we will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpretation. Armendariz, 160 Wash.2d at 110-11, 156 P.3d 201.
¶ 17 Before its 2003 revision, in which "reckless manner" replaced the "wanton or willful" standard, the first sentence of RCW 46.61.024 stated:
Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.
(Emphasis added.).
¶ 18 Both parties rely on State v. Roggenkamp, 153 Wash.2d 614, 106 P.3d 196 (2005) for support. Ridgley argues that the "jury may have viewed the `wanton or willful' standard as less onerous than Roggenkamp's `rash/heedless and indifferent' standard." Br. of Appellant at 5. The State asserts that Roggenkamp only discusses the "reckless manner" standard as it applies to vehicular homicide and vehicular assault and is, therefore, inapposite here. Br. of Resp't at 1-2.
¶ 19 In Roggenkamp, the Washington Supreme Court consolidated two cases involving the "reckless manner" standard. 153 Wash.2d at 618, 106 P.3d 196. In affirming Division One's decision in State v. Roggenkamp, 115 Wash.App. 927, 64 P.3d 92 (2003), the Court explained that
through a series of decisions by this court, a definition of the term "in a reckless manner" for purposes of the vehicular homicide and vehicular assault statutes has evolved and is now well settled. This evolution culminated in our decision in State v. Bowman, 57 Wash.2d 266, 270, 271, 356 P.2d 999 (1960), in which we indicated that driving "in a reckless manner" means "driving in a rash or heedless manner, indifferent to the consequences." (Emphasis omitted.)
Roggenkamp, 153 Wash.2d at 621-22, 106 P.3d 196. The Court also indicated that the term "reckless manner" contemplated a lesser mental state than that of the "willful or wanton"[4] standard. Roggenkamp, 153 Wash.2d at 626-29, 106 P.3d 196.
¶ 20 When the legislature amended RCW 46.61.024 in 2003 to adopt the "reckless manner" standard for attempting to elude, it presumably acted knowing the appellate court's interpretation of the prior statute. See State v. Bobic, 140 Wash.2d 250, 264, 996 P.2d 610 (2000) (noting that the Legislature is presumed to be aware of judicial interpretations of its enactments). And RCW 46.98.020 states that "provisions of this title shall be construed in pari materia even though as a matter of prior legislative history they were not originally enacted in the same statute."[5] Therefore, the "reckless manner" standard of RCW 46.61.024 at issue here takes the same meaning as the "reckless manner" standard of RCW 46.61.520 (vehicular homicide) and RCW 46.61.522 (vehicular assault).
¶ 21 It is undisputed that the jury instructions here did not include the "`rash or heedless manner, indifferent to the consequences'" definition of "reckless manner" *111 discussed in Roggenkamp. 153 Wash.2d at 628, 106 P.3d 196 (quoting Bowman, 57 Wash.2d at 271, 356 P.2d 999 (emphasis omitted)). Thus, the State's assertion that the jury instructions were not erroneous is without merit. But, RCW 9A.08.010(2) allows proof of a higher mental state to also establish the presence of a lower mental state.[6] Although "reckless manner" and "willful or wanton" are not specifically addressed as states of mind contemplated by RCW 9A.08.010(2), Roggenkamp makes it clear that "willful or wanton" is a "higher mental state" than "reckless." 153 Wash.2d at 626, 106 P.3d 196. Thus, "reckless" conduct is established by proof of "willful or wanton" conduct and, therefore, we hold that the erroneous "willful or wanton" jury instruction was harmless beyond a reasonable doubt.
¶ 22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
¶ 43 We affirm.
We concur: HOUGHTON, C.J., and ARMSTRONG, J.
NOTES
[1] RCW 46.61.024(1) provides:

Any driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.
[2] RAP 10.10(a).
[3] The Washington Pattern Jury Instructions spell the term willfully as "wilfully" and, alternately, "willfully"; both spellings are reflected in these jury instructions and both are correct.
[4] The Roggenkamp court referred to the term "willful or wanton," rather than the "wanton or willful" language used in former RCW 46.61.024.
[5] "Under rules of statutory construction each provision of a statute should be read together (in pari materia) with other provisions in order to determine the legislative intent underlying the entire statutory scheme. The purpose of interpreting statutory provisions together with related provisions is to achieve a harmonious and unified statutory scheme that maintains the integrity of the respective statutes." State v. Chapman, 140 Wash.2d 436, 448, 998 P.2d 282 (2000) (footnotes omitted).
[6] RCW 9A.08.010(2) states:

When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly. When recklessness suffices to establish an element, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.