# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 71938-6-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDREW FORD SMITH, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 20, 2015 |
| | ) | |

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2015 JUL 20 AM 9: 15
FILED

DWYER, J. — Andrew Smith appeals from the judgment entered on a jury's verdict finding him guilty of attempting to elude a pursing police vehicle. Smith challenges the sufficiency of the evidence to support the jury's verdict, contending that insufficient evidence was adduced to establish that he drove "in a reckless manner" after the police officer activated his vehicle's emergency lights. Smith also contends that the trial court's allowance of testimony opining that Smith "was under the influence of something," and a reference to Alcoholics Anonymous, an objection to which was sustained and the evidence ordered stricken, constitute reversible error. We reject Smith's contentions, concluding both that sufficient evidence was adduced at trial and that he fails to establish an entitlement to appellate relief with regard to the allegedly improper testimony. Consequently, we affirm.

I

On March 18, 2012, Smith drove to Brian Gaylord's house in his green Ford Explorer. When confronted by Gaylord, Smith asserted that he needed to

relieve himself, at which time Smith appeared to urinate in Gaylord's goat pen. Gaylord questioned Smith, threatened to call the police, and eventually escorted Smith back to Smith's vehicle and told him that he needed to leave. Smith then slowly, but erratically, backed out of Gaylord's driveway, taking 10 minutes to back out of the quarter-mile-long driveway, despite the fact that the driveway was circular and Smith could have easily driven forward to leave the property.

Gaylord's daughter, Bree Gaylord, was also at his residence that day and became concerned after seeing Smith go behind the shop and appear to urinate in the goat pen. After Gaylord and Smith walked out from behind the shop, Bree called 911. Officer Dodds was dispatched in response to Bree's 911 call and passed Smith's green Ford Explorer going in the opposite direction on State Route 20. Dodds turned his fully marked patrol car around and began to follow Smith's vehicle. Dodds followed Smith for two to four miles on State Route 20, during which time Dodds observed Smith's vehicle cross the double yellow center line on two occasions. As they approached Metcalf Street, Smith's vehicle made an abrupt move into the center lane and made a left turn southbound on Metcalf Street, without signaling, causing eastbound traffic on State Route 20 to come to a stop. Dodds then contemporaneously activated both his vehicle's emergency lights and siren.

Smith did not stop his vehicle but, rather, continued south on Metcalf Street, eventually making a U-turn, passing Dodds vehicle, and proceeding north. Dodds followed Smith, continuing the pursuit until Smith went past a "stop line" and came to a stop partially in the eastbound lane of State Route 20. Dodds

exited his patrol vehicle and made contact with Smith at the driver's side door of Smith's vehicle. There was loud music blaring from Smith's vehicle and Smith ignored multiple requests from Dodds to turn off the music and to turn off his ignition. Instead, while Dodds was standing at the driver's side window, Smith put his vehicle into drive and performed a U-turn, crossing into State Route 20 and continuing south on Metcalf Street. Dodds returned to his patrol vehicle and recommenced his pursuit of Smith.

Meanwhile, a nearby officer, Sergeant Adams, joined the pursuit in a fully marked patrol vehicle with its emergency lights activated. Smith's vehicle continued down Metcalf Street at a slow rate of speed. Adams maneuvered his vehicle in front of Smith's vehicle, and Dodds positioned his vehicle behind Smith's, boxing Smith in. Dodds and Adams eventually forced Smith's vehicle to a stop in front of the Sedro-Woolley Police Department. Dodds proceeded to take Smith into custody.

Smith was charged by information with attempting to elude a pursuing police vehicle and with driving under the influence. A jury returned a guilty verdict as to the charge of attempting to elude a pursuing police vehicle; however, Smith was found not guilty of driving under the influence. Smith was sentenced to two months of incarceration and ordered to pay various amounts of fines and assessments. He now appeals.

II

Smith contends that insufficient evidence was adduced at trial to support the jury's finding that he was driving recklessly after Officer Dodds activated his

- 3 -

patrol vehicle's emergency lights. This is so, he asserts, because the phrase "in a reckless manner" means to drive in a "rash or heedless manner, indifferent to the consequences," which Smith avers requires a high rate of speed, and he was not speeding. We disagree.

The relevant statute sets forth the offense of attempting to elude a pursuing police vehicle, in pertinent part, as being committed by:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop.

RCW 46.61.024(1).

Division Two has held, and we agree, that for the offense of attempting to elude a pursuing police vehicle the phrase "'in a reckless manner'" means "'driving in a rash or heedless manner, indifferent to the consequences.'" State v. Ridgley, 141 Wn. App. 771, 781, 174 P.3d 105 (2007) (quoting State v. Roggenkamp, 153 Wn.2d 614, 621-22, 106 P.3d 196 (2005)). In no case has the definition of "driving in a rash or heedless manner, indifferent to the consequences" been reduced down to a requirement that the behavior include driving at a high rate of speed. See e.g., State v. Randhawa, 133 Wn.2d 67, 78, 941 P.2d 661 (1997) (speed was a factor but was explicitly held to not be dispositive; "although it was essentially undisputed that Randhawa was speeding, we cannot say with substantial assurance that the inferred fact of reckless driving flowed from the evidence of speed alone"); Ridgley, 141 Wn.

App. at 775-76 (speed may have been a factor but not indicated to be dispositive).

Additionally, when interpreting statutes, "we 'must not add words where the legislature has chosen not to include them.'" Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). The relevant statute does not mention speed.

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop.

RCW 46.61.024(1).

Nor does the accepted judicial definition of "in a reckless manner"—"driving in a rash or heedless manner, indifferent to the consequences"—reference the driver's rate of speed. Thus, we refuse to reduce "driving in a rash or heedless manner, indifferent to the consequences" down to a requirement that the prohibited behavior necessarily includes driving at a high rate of speed.

"When a statutory term is undefined, the court may look to a dictionary for its ordinary meaning." In re Estate of Blessing, 174 Wn.2d 228, 231, 273 P.3d 975 (2012) (citing State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010)); accord, State v. Rodgers, 146 Wn.2d 55, 62, 43 P.3d 1 (2002). The dictionary definition of "rash" is: "characterized by or proceeding from lack of deliberation or caution" and "imprudently involving or incurring risk." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1883 (2002). The dictionary definition of "heedless" is:

-5-

"inattentive, unmindful, careless, unobservant, [or] oblivious." WEBSTER'S, supra, at 1049.

The due process clauses of the federal and state constitutions, U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3, require that the State prove each element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

A claim of evidentiary insufficiency admits the truth of the State's evidence and all reasonable inferences from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence can be equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the jury on questions of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064 (2012).

The jury was instructed that to convict it must find "[t]hat while attempting to elude a pursuing police vehicle, the defendant [Smith] drove his vehicle in a reckless manner." Jury Instruction 11. The jury was further instructed that "[t]o operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences." Jury Instruction 12.

After Officer Dodds activated his vehicle's patrol lights, Smith repeatedly ignored Dodds's presence and continued driving. A jury could find that Smith's ignorance demonstrated a state of being that was, at a minimum, "inattentive, unmindful, . . . [or] oblivious," thus establishing that he drove heedlessly. WEBSTER'S, supra, at 1049. Furthermore, after Dodds had exited his vehicle and made contact with Smith, and with Dodds standing right next to Smith's vehicle, Smith put his vehicle into drive and made another U-turn. A jury could find this to be an action blatantly taken with an "indiffere[nce] to the consequences." When viewed in the light most favorable to the State, sufficient evidence was adduced to support the jury's conclusion that Smith drove "in a rash or heedless manner, indifferent to the consequences."[1]

III

Smith contends that the trial judge improperly allowed three instances of testimony opining on Smith's intoxication level. He asserts that testimony stating that Smith was "under the influence of something," along with a stricken

---

[1] Although not necessary for affirmance, sufficient evidence was also adduced that Smith drove in a rash manner. Smith made a U-turn in the middle of Metcalf Street, drove north, and did not come to a stop until he was partially into the eastbound lane of State Route 20, thereby exposing himself to the possibility of a collision and obstructing traffic. Thus, a jury could find that Smith demonstrated a "lack of deliberation or caution" and "imprudently involv[ed] or incur[ed] risk" sufficient to conclude that he drove rashly. WEBSTER'S, supra, at 1883.

reference to Alcoholics Anonymous, require reversal. This is so, he maintains, because testimony that he "was under the influence of something," was not a valid opinion as to his intoxication but, rather, was an opinion on his guilt, and it is improper to opine on the defendant's guilt. Smith further asserts that the only value to the testimony regarding Alcoholics Anonymous was to prove "the character of a person in order to show action in conformity therewith," and thus was impermissible pursuant to ER 404(b). We disagree.

"Generally, no witness may offer testimony in the form of an opinion regarding the guilt . . . of the defendant." State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). However, Smith is appealing his conviction for attempting to elude a pursuing police vehicle. Intoxication is not an element of attempting to elude a pursuing police vehicle. Nor is intoxication a dispositive indicator of whether Smith drove in a "rash or heedless manner, indifferent to the consequences," while attempting to elude a pursuing police vehicle. Therefore, testimony that Smith was "under the influence of something" did not constitute an opinion on his guilt. Smith does not establish an entitlement to appellate relief on this claim of error.

With regard to the reference to Alcoholics Anonymous, the experienced trial judge properly sustained the defendant's objection and ordered that the objectionable testimony be stricken, thereby "cur[ing] any error recognized by defense counsel at trial." State v. Fisher, 4 Wn. App. 512, 514, 483 P.2d 166 (1971). Appellate relief is not warranted.

Finally, even if there were error, the alleged error was harmless. "'Evidentiary error is grounds for reversal only if it results in prejudice. An error is prejudicial if, "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole.'" In re Detention of Post, 145 Wn. App. 728, 748, 187 P.3d 803 (2008) (citations omitted) (quoting State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001)), aff'd, 170 Wn.2d 302, 241 P.3d 1234 (2010). As previously established, testimony that Smith was "under the influence of something" was not an opinion on his guilt of the charge of attempting to elude a pursuing police vehicle—the only count on which he was convicted and the count from which his appeal is taken. Further, the jury found Smith not guilty of driving under the influence. While the testimony that Smith was "under the influence of something" clearly applied to the DUI charge, the jury's not guilty verdict plainly indicates that it paid little heed to the testimony. Any error was harmless.

Affirmed.

We concur: