# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73323-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DONNIE JAMAAL GREER, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 1, 2016 |
| | ) | |

APPELWICK, J. — Greer appeals his conviction for attempting to elude a pursuing police vehicle. He contends the trial court abused its discretion when it refused to instruct the jury on the lesser included offense of failure to obey an officer. We affirm.

## FACTS

On August 22, 2013, Detective Aaron Thompson[1] and Deputy Christopher Przygocki[2] were working as plain clothes officers in Burien. Detective Thompson was wearing a t-shirt, jeans, and a ball cap. Deputy Przygocki was wearing a t-shirt and jeans. Detective Thompson and Deputy Przygocki were in an

---

[1] Detective Thompson was a deputy in the King County Sheriff's Department at the time of trial.

[2] Deputy Przygocki was a detective in the King County Sheriff's Department at the time of trial.

unmarked Dodge Caravan minivan. The van is equipped with a siren and lights inside the front window, but it does not have the light bar across the roof like typical police vehicles. The officers were parked in a grocery store parking lot when they observed Donnie Greer. Based on their observations, the officers decided to follow Greer and perform an investigative stop. Both officers put on their "throw-over" vests, which indicate that they are law enforcement officers.

Greer drove his vehicle out of the parking lot and the officers followed. After briefly following Greer, Detective Thompson activated the emergency lights on the unmarked car. Greer immediately pulled to the side of the road and stopped. The officers stopped about a car length behind Greer. Deputy Przygocki got out of the passenger seat and walked toward Greer's car. Deputy Przygocki had a gun with him, and he may have drawn it as he approached Greer's vehicle. As Deputy Przygocki approached, Greer drove off. The officers activated their siren, followed in the unmarked vehicle, and radioed that a vehicle was fleeing from a traffic stop. While the officers were following Greer, Greer was speeding and failed to stop at stop signs.

King County Sheriff Deputy James Price was working patrol that day and went to assist the other officers. Deputy Price was wearing a police uniform, and his badge was visible. He was driving a Ford Crown Victoria with sheriff markings on the side, dual spotlights, and overhead lights. Deputy Price had stopped at the intersection of Southwest 108th and 4th Avenue Southwest. Deputy Price moved his police vehicle slightly into the intersection and activated

2

his lights in order to get Greer to stop when Greer reached that intersection. But, Greer did not stop at the intersection. Instead, Greer turned onto 108th and proceeded. Greer and the other officers drove past Deputy Price while Deputy Price's lights were activated. When Greer passed Deputy Price's vehicle, his car came within five to seven feet of Deputy Price's vehicle. Deputy Price made a U-turn and fell into pursuit behind Deputy Thompson and Detective Przygocki.

Pursuant to department policy that a marked patrol vehicle should be the lead vehicle in a pursuit when possible, Deputy Price caught up and took the lead. After a 3.9 mile pursuit that took about four or five minutes in total, Greer turned into a Park and Ride. Once Greer's vehicle was stopped in the Park and Ride, Greer cooperated and went willingly into custody.

On February 26, 2014 Greer was charged with attempting to elude a pursuing police vehicle contrary to RCW 46.61.024. Prior to trial, Greer requested jury instructions for the lesser included offense of failure to obey a police officer pursuant to RCW 46.61.022. The State objected to the instruction, noting that the difference between attempting to elude and failure to obey is that to be convicted of attempting to elude, the defendant had to be driving in a reckless manner. The State maintained that all of the evidence supported that Greer was driving in a reckless manner. Greer argued that if the State failed to prove the reckless element of attempting to elude, the jury should be given the option to convict Greer of failure to obey a police officer.

At trial, Greer testified that he did not know that Detective Thompson and Deputy Pryzgocki were police officers. He testified that because he saw a "regular person" approaching him with a gun, he was scared and took off. He stated that he drove to the Park and Ride, because he knew there were cameras there and he thought he would be safe. He testified that he did not notice there was a sheriff behind him until right before he arrived at the Park and Ride. He testified that at that point, he slowed down, came to a complete stop, and put his hands in the air.

After hearing all of the testimony, the trial court found that there was no factual basis for the lesser included offense instruction, because the evidence showed that Greer was driving in a reckless manner. Consequently, the court provided jury instructions for only the attempting to elude charge. The jury found Greer guilty of attempting to elude a pursuing police vehicle.

Greer appeals.

## DISCUSSION

Greer argues that the trial court erred, because he was entitled to have the jury instructed on the lesser included offense of failure to obey an officer. He further asserts that if the State prevails in this appeal, this court should decline to impose appellate costs on him because he is indigent.

I. Lesser Included Offense Instruction

The right to a lesser included offense instruction is statutory, codified at RCW 10.61.006. State v. Condon, 182 Wn.2d 307, 316, 343 P.3d 357 (2015).

4

In State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), the Washington Supreme Court set forth a two-prong test to determine whether a party is entitled to an instruction on a lesser included offense under RCW 10.61.006. Under the first prong of the test (the legal prong), the court asks whether the lesser included offense consists solely of elements that are necessary to conviction of the greater, charged offense. Id. Under the second (factual) prong, the court asks whether the evidence presented in the case supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense. Id. at 448. The requesting party is entitled to the lesser included offense instruction when the answer to both questions is yes. Id. at 447.

Below, the State conceded that the legal prong of the Workman test was satisfied. And, the trial court agreed that the legal prong was satisfied. Therefore, our focus is strictly on the factual component of the Workman test. The purpose of the factual test is to ensure that there is evidence to support the giving of the requested instruction. State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction. Id. at 455-56. A trial court's refusal to give instructions to a jury, if based on a factual dispute, is reviewable for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

5

The attempting to elude a police vehicle statute, RCW 46.61.024(1), states,

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

The failure to obey a police officer statute, RCW 46.61.022, provides:

> Any person who willfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer . . . is guilty of a misdemeanor.

To drive a vehicle "in a reckless manner" for purposes of the attempting to elude statute means driving in a rash or heedless manner, indifferent to the consequences. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.05, at 255 (3d ed. 2008); State v. Ridgley, 141 Wn. App. 771, 781, 174 P.3d 105 (2007). Greer argues that whether the evidence supports an inference that he did not drive in a reckless manner requires the court to pay close attention to the sequence of events. He notes that it was not until Deputy Price joined the pursuit that an indisputably uniformed police officer signaled Greer to stop. Because of this, he claims the relevant question is whether the evidence supports an inference that Greer did not drive in a reckless manner after Deputy Price signaled for him to stop. Greer implies that this signal occurred only after Deputy Price took over as the lead vehicle rather than after he initially drove past Deputy Price's marked vehicle with its lights flashing.

6

Even accepting this assertion and disregarding the manner of Greer's driving between the initial stop and when Deputy Price took over as the lead vehicle, the evidence supports that Greer drove in a reckless manner. Deputy Price took over as the lead vehicle at South 102nd and 1st Avenue South. When Deputy Price took over as the lead vehicle, Greer was ahead of him by about five to six car lengths. At this point, Greer was traveling about 25 miles per hour (MPH) through a curvy stretch of road. After the curvy portion of the road, Greer drove through a stop sign at an intersection without stopping. Deputy Price testified that when he finally caught up to Greer, both cars were travelling at 65 MPH on Myers Way. Deputy Thompson testified that Greer was driving 50 MPH on that road. Deputy Price testified that he believed that speed limit on Myers Way was either 40 or 45 MPH. As Greer approached the turn for the Park and Ride, he drove in the wrong lane of traffic on Myers Way before making the turn into the Park and Ride driveway. Greer made the turn at an elevated rate of speed. Once they were in the Park and Ride area, Greer slowed to ten or fifteen MPH, but was not preparing to come to a stop. Consequently, Deputy Price deliberately made contact with Greer's vehicle to get him to stop. At that point, Greer cooperated with the police and went willingly into custody.

Greer also testified as to his version of the events at trial. Greer testified that he first noticed that there was a sheriff behind him when he was driving down Myers Way—almost at the Park and Ride. He testified that he did not pull over right away and that he waited until he reached the Park and Ride to pull

7

over. He testified that he turned into the Park and Ride driveway, then slowed down all of the way, came to a complete stop, and put his hands in the air. He testified that Deputy Price hit the side of his car when he was already stopped.

On appeal, Greer argues that his speeding and failure to stop at the stop sign after Deputy Price took over as the lead vehicle was not reckless, because he did not pose any danger to others nearby. And, Greer emphasizes that there were no other cars on the roadway when he entered the oncoming lane of traffic before turning into the Park and Ride. Greer fails to cite authority to support his implicit assertion that driving in a reckless manner for purposes of the attempting to elude statute requires endangering others. In fact, the law is clear that disregard for the safety of others is not an element of the standard. See State v. Roggenkamp, 153 Wn.2d 614, 618, 106 P.3d 196 (2005) (rejecting defendant's argument that "in a reckless manner" as it appears in the vehicular homicide statute is defined by the willful or wanton disregard for the safety of persons or property and holding that it means driving in a rash or heedless manner, indifferent to the consequences); Ridgley, 141 Wn. App. at 781 (holding that the "reckless manner" standard of the attempting to elude statute takes the same meaning as the "reckless manner" standard of the vehicular homicide and vehicular assault statutes).[3]

---

[3] Greer compares the facts in his case to those in State v. Gallegos, 73 Wn. App. 644, 653, 871 P.2d 621 (1994), in which the court held that a lesser included jury instruction for refusal to cooperate was not warranted. He suggests that because the manner of his driving was less egregious than the defendant's driving in Gallegos, that he is entitled to the lesser included instruction for failure to obey. But, Gallegos is not instructive. As Greer points out, the Gallegos court was considering an older version of the attempting to elude statute that required

A trial court must consider all of the evidence that is presented at trial when it is deciding whether an instruction should be given. Fernandez-Medina, 141 Wn.2d at 456. And, the State's unrebutted evidence—that Greer was speeding, that he failed to stop at a stop sign, and that he drove in the oncoming lane of traffic—clearly supports the inference that Greer was driving in a rash or heedless manner, indifferent to the consequences. There is no requirement that a lesser included instruction be given solely because the jury might simply disbelieve the State's evidence. State v. Rodriguez, 48 Wn. App. 815, 820, 740 P.2d 904 (1987). Consequently, the trial court did not abuse its discretion when it declined to give the lesser included jury instruction for failure to obey an officer.

## II. Appellate Costs

Greer asserts that this court should not award the State costs on appeal if the State prevails. Greer's argument relates to this court's recent decision in State v. Sinclair, 192 Wn. App. 380, 367 P.3d 612 (2016). The State did not respond to this assertion.

We adhere to Sinclair. Greer was found to be indigent prior to trial. He was represented by an appointed attorney at trial. The superior court entered an order authorizing Greer's appeal in forma pauperis, finding that Greer could not contribute to the cost of appellate review. Once indigency is established, the Rules of Appellate Procedure establish a presumption of continued indigency

---

it to consider whether the defendant was driving with wanton and willful disregard for others—not whether the defendant was driving in a reckless manner. Id. at 648; Former RCW 46.61.024 (1983).

throughout review. <u>Sinclair</u>, 192 Wn. App. at 393; RAP 15.2(f). The State has provided no factual basis to overcome the continuing presumption of indigency. Consistent with <u>Sinclair</u>, we conclude that no costs should be awarded to the State on appeal.

We affirm.

WE CONCUR: