IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80129-5-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| ANTOINE R. MILLS, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — Antoine Mills appeals his convictions for attempting to elude a pursuing police vehicle and unlawful possession of a firearm in the first degree. He says that the trial court erred by admitting telephone calls he made from jail and evidence of an outstanding warrant. He also contends that the State presented insufficient evidence to convict him of either charge. We affirm.

I. BACKGROUND

Federal Way police received an anonymous 911 call that Mills had an outstanding warrant for his arrest and was at a house in Federal Way. Several officers gathered near the reported address, preparing to arrest Mills. A few minutes later, Mills and another person, later identified as his adolescent son, left the house and got into a white pickup truck.

Mills began driving south, then made a U-turn and drove north, back towards the officers. As Mills stopped at an intersection, Officer Jedidiah Tan

Citations and pin cites are based on the Westlaw online version of the cited material.

pulled his police vehicle out into the intersection, blocking Mills's path of travel, and activated its overhead lights. Tan exited his vehicle.

Mills put the truck into reverse and starting driving backwards, then made another U-turn. His tires squealed.

Another officer set up spike strips across the road in Mills's path. Mills came around the corner at about 30 to 35 miles per hour, ran over the spike strips, and continued driving south on residential streets. Mills did not slow down.

Tan pursued Mills down the residential streets at about 50 to 60 miles per hour, but did not catch up to him. Tan testified that he saw about 12 to 18 people along the path he drove, in their yards or on the sidewalk. There were no vehicles or people on the roadway.

Mills stopped the pickup truck on the side of the road, yelled "run home" to his son, and they ran in different directions. Tan, who had continued looking for Mills, arrived at the abandoned truck seconds after Mills and his son had fled. The rim was all that remained of the left front tire, and it had left grooves in the asphalt. Officers called for a police tracking dog, and neighbors pointed in the directions they had seen people running from the car.

The dog tracked Mills to a nearby home, where he was arrested. The police towed Mills's truck.

In the following days, Mills placed several phone calls from jail, during which he discussed a gun that was hidden under the hood of the truck, by the

battery. Detectives listened to these calls, obtained a search warrant for the truck, searched it, and found the gun in the location Mills described.

The State charged Mills with attempting to elude a pursuing police vehicle and unlawful possession of a firearm. After trial, a jury found Mills guilty on both counts.

Mills appeals.

## II. DISCUSSION

### A. Admission of Mills's telephone calls from jail

Mills says the trial court erred by admitting five telephone calls that he made from jail because (1) they were not properly authenticated; (2) they were hearsay; and (3) their probative value was substantially outweighed by the danger of unfair prejudice, citing ER 403. We disagree.

The trial court admitted five telephone calls Mills made from jail after he was arrested. In these calls, Mills explains that there is a gun under the hood of the truck, by the battery. The State moved to admit the jail calls to prove consciousness of guilt–that Mills possessed the gun–because Mills's defense was a general denial that he did not have control or possession of the gun.

We review a trial court's admission of evidence for an abuse of discretion. State v. Bradford, 175 Wn. App. 912, 927, 308 P.3d 736 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Id.

First, the State properly authenticated the telephone calls. Under ER 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This requirement is met "if sufficient proof is introduced to permit a reasonable trier of fact to find in favor of authentication or identification." State v. Danielson, 37 Wn. App. 469, 471, 681 P.2d 260 (1984). When making a determination as to authenticity, the trial court is not bound by the rules of evidence. Bradford, 175 Wn. App. at 928. "A trial court may, therefore, rely upon . . . lay opinions, hearsay, or the proffered evidence itself in making its determination." State v. Williams, 136 Wn. App. 486, 500, 150 P.3d 111 (2007). ER 901(b) provides an illustrative list that conforms to the rule, but it does not limit the kind of evidence that may be presented or dictate a particular method for authenticating the evidence. State v. Payne, 117 Wn. App. 99, 106, 69 P.3d 889 (2003).

Mills identified himself at the beginning of each call he placed from jail. Mills talked at length about facts and circumstances highly personal and unique to him. For example, he explained that he had his son in the car with him when he got into a high-speed chase with the police, asked repeatedly about his son, and explained exactly where the gun was hidden under the hood of the truck. The trial court judge could rely on the contents of the calls themselves to authenticate them. Given the extensive, personal, and detailed nature of the

4

discussions, it strains credulity to believe the caller could have been anyone besides Mills.

This conclusion is bolstered by testimony from King County Jail Sergeant Ben Frary about the security procedures inmates must use to make telephone calls from jail. Frary testified that when a person is admitted to jail, they are assigned a unique booking and arrest number (BA number). The inmate uses the BA number to create a unique personal identification number (PIN). The inmate must use both the BA number and PIN to make a telephone call. Frary also testified that the jail also uses a voice biometric system to ensure the voice stating an inmate's name at the beginning of each call matches their voice sample in the system. Frary explained that the voice biometrics system establishes the identity of the inmate making the call and prevents people from stealing others' PIN numbers. Mills contends that another inmate could have bypassed the voice biometrics system by blowing into the phone, but offers no evidence that this occurred here. Frary also testified that the telephone calls were placed from the area of the jail where Mills was housed at the time. Mills does not even allege, nor does he offer any evidence, that he did not follow these standard procedures when he placed the calls at issue here.

Mills fails to make a serious argument that the caller was anyone but himself. The trial court could reasonably conclude that the five jail calls were what they purported to be based on Mills's self-identification, the highly personal, specific contents of the calls, and the testimony regarding the security

procedures in place for making telephone calls at the jail. The State properly authenticated the messages.

Second, the calls were not hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." ER 801(c). A statement by a party-opponent is not hearsay. ER 801(d)(2). Mills's statements in the phone calls were statements of a party-opponent, and thus not hearsay. The statements made by the other party on the line were not offered for the truth of the matter asserted, but to provide context for Mills's statements. Mills offers a bulleted list of statements by the other party on the line that he contends were offered for the truth of the matter asserted. However, he fails to offer any explanation as to why he believes any of the listed statements were offered to prove their *content*—i.e., for their truth. For example, the statements include that Mills's son was with his uncle, that the truck was in "Ashley's name" or "your girlfriend's name," and statements about the cost and process of retrieving the truck or its contents from the impound lot. Because these statements would not tend to prove any element of the crimes Mills was charged with, it does not appear that they were offered to prove their contents. It was Mills's own statements about the gun hidden in the truck that were offered to prove that he possessed the gun.

Third, Mills did not object to the five admitted telephone calls on the basis of ER 403 at the trial court. Mills raised an ER 403 objection only to a separate

June 7, 2018 jail call, which the trial court excluded.  A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial.  State v. Powell, 166 Wn.2d 73, 83, 206 P.3d 321 (2009).  Because Mills failed to raise an ER 403 objection to the five admitted telephone calls below, he may not raise the objection for the first time on appeal and we decline to reach the issue.

The trial court acted within its discretion in admitting the recordings.

B. Admission of outstanding warrant for Mills's arrest

Mills argues that the State erred in admitting evidence of his outstanding warrant at trial.

The State moved in limine to admit evidence that Mills had a warrant out for his arrest.  Mills responded by offering to stipulate that "the officers had a legal reason to pursue Mr. Mills."  After the State explained why it believed the warrant was relevant and probative, the trial court commented to Mills's attorney, "Well, but the State doesn't have to accept your stipulation and it doesn't appear that [the State] . . . is willing to accept that stipulation."

The discussion about the warrant continued.  At the end, the attorney for the State explained, "My expectation is that I will direct the witnesses to say that they respond- that they reported to this particular location because an anonymous caller had indicated that the defendant was there and had a warrant."  Mills's attorney replied, "And I think if – if it just goes to that, I think that would be

acceptable to defense." The trial court agreed that if the State adhered this stated plan, it would allow the testimony of the warrant to come in.

At trial, Officer Sean Warrick testified that he responded to an anonymous 911 call alerting officers that Mills was at a specific address and had an outstanding warrant. He said the officers confirmed there was a warrant.

By agreeing to the State's proposal of limited testimony on the warrant, Mills abandoned or waived this issue. See State v. Valladares, 99 Wn. 2d 663, 672, 664 P.2d 508 (1983) (defendant who voluntarily withdraws motion to suppress waives or abandons objection to admission of evidence). The State adhered to the agreed-upon testimony of the warrant. Because Mills abandoned this issue, we decline to address it further.

Mills points to the court's comment about the State not having to accept his proposed stipulation as an error. But as the exchanges quoted above show, this was merely part of the discussion, not an oral ruling or final decision of the court. Instead, the discussion continued until the parties agreed on testimony that Mills's attorney specifically stated was acceptable to defense. Because Mills agreed to this, he did not preserve any objection for appeal.

The trial court did not abuse its discretion in admitting five telephone calls that Mills made from jail.

1. Sufficiency of the evidence

Mills argues that the State failed to present sufficient evidence to prove either of his convictions. We disagree.

8

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

First, Mills argues that the State presented insufficient evidence to convict him of attempting to elude a pursuing police vehicle because no rational jury could have found that he drove in a reckless manner.

To convict Mills of attempting to elude a police vehicle, the State needed to prove that Mills drove his car "in a reckless manner while attempting to elude a pursuing police vehicle." RCW 46.61.024. For this statute, "reckless manner" means a "rash or heedless manner, with indifference to the consequences." State v. Naillieux, 158 Wn. App. 630, 644, 241 P.3d 1280 (2010) (quoting State v. Ratliff, 140 Wn. App. 12, 14, 164 P.3d 516 (2007)); State v. Ridgley, 141 Wn. App. 771, 781, 174 P.3d 105 (2007).

The State presented evidence that Mills drove recklessly down residential streets for about 15 blocks. After spike strips deflated his tires, Mills continued

9

speeding down the road on his tire rims. A witness described the incident as follows: "I was outside with my cat and I hear, like, a freight train sound coming from one of the side streets turning into . . . the neighborhood. And it was a . . . truck . . . [T]here were sparks flying from the front tire, it looks like it was blown out, and then it stops, like, right on that street, where I was." Officer Tan testified that he pursued Mills at a speed of 50 to 60 miles per hour on the residential road, but was unable to catch him. The speed limit on the residential road was only 25 miles per hour. Mills's young son was in the car with him. There were also about 12 to 18 people along Mills's route of travel that were also endangered by him speeding unsafely down the road. This evidence reflects that Mills drove in a rash or heedless manner, indifferent to the consequences. Viewing this evidence in the light most favorable to the State, a reasonable jury could find that Mills drove recklessly.

Second, Mills says that the State presented insufficient evidence to convict him of unlawful possession of a firearm because no jury could have found that he was in constructive possession of the gun.

To convict Mills of first degree unlawful possession of a firearm, the State had to prove that he possessed or had control over any firearm. RCW 9.41.040(1)(a). Possession may be actual or constructive. State v. Chouinard, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). The State may establish constructive possession by showing the defendant had dominion and control over the firearm. Id. Courts have found sufficient evidence of

10

constructive possession of contraband, and dominion and control, when the defendant was the driver or owner of the car in which it was found. See, e.g., State v. Bowen, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010); State v. Turner, 103 Wn. App. 515, 521, 13 P.3d 234 (2000); State v. Echeverria, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997).

Mills was driving the truck in which the gun was hidden. The only other person in the truck was his minor son. In telephone calls from jail, Mills repeatedly described exactly where the gun was hidden, by the battery under the hood of the truck, and requested that someone retrieve the gun from the truck to help him avoid another criminal charge. No evidence exists that anyone else knew where the gun was before Mills told them. He describes the truck as "my truck," and his medication was found in the glove box. Mills could quickly access the gun while it was in the hood of his truck, and exclude others from using it, or even knowing of its presence, because of its hiding place.

Mills says that the evidence linking him to the gun here is more attenuated than in Chouinard. In Chouinard, Division Two of this court held the State presented insufficient evidence against Chouinard to establish dominion and control over a firearm because Chouinard was a passenger in the car and the State demonstrated only his mere proximity to the weapon and his knowledge that the weapon was in the vehicle. Chouinard, 169 Wn. App. at 902-03. By contrast, Mills was the driver. Even from jail, Mills repeatedly tried to exercise dominion and control over the gun by making phone calls requesting that others

remove the gun from the truck on his behalf.

Mills argues that the gun did not have his fingerprints on it, was not tested for DNA, and was not registered to him. None of these are requirements for constructive possession. Mills also argues that other people may have had dominion over the truck. But he points to no evidence that anyone else possessed or controlled the gun, or even knew where the gun was before he told them.

Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Mills possessed or had control over the gun.

We affirm.

_Chun, J._

WE CONCUR:

_Verellen, J._          _Appelwick, J._